Green, J.
delivered the opinion of the court,
This bill is brought to set aside a bill of sale for negroes.
The complainant charges that having become addicted to drunkenness, and considerably indebted, the defendant, who is his father-in-law, persuaded him that he was his best friend, and could manage his property for him better than he could, and taking advantage of his intoxicated situation, procured him to make a bill of sale for twenty-three negroes, dated the first of March, 1842, for the consideration expressed, of six thousand dollars, no part of which was-paid. The bill prays that *583 said bill of sale be set aside, and that the complainant be restored to the possession of his negroes.
The answer admits the execution of the bill of sale, and admits the complainant was an habitual drunkard, but denies that bill of sale was made merely to enable defendant to manage the property for the complainant. The defendant insists that he fairly purchased the said slaves without fraud and without condition, that the complainant was not drunk when the bill of sale was made; no money paid at the time of the execution of the bill of sale, as it was agreed that the defendant was to pay the defendant’s debts, which he had done to the amount of four thousand five hundred dollars, and the balance of the purchase money he is ready to pay at any time.
It does not appear from the proof that bill of sale was made to defraud the creditors of Morris, nor does it appear that Nixon employed any artificial or fraudulent contrivance to induce Morris to make the bill of sale. At the time it was executed Morris was intoxicated, but not so drunk as to be incapable of understanding the transaction. The proof shows that Morris had married the daughter of Nixon a year or two before the bill of sale was made; that he owned the twenty-three negroes conveyed in the bill of sale and ten others that were not conveyed; that he was an habitual drunkard, so that many witnesses say he was not able to manage his affairs, which had become greatly deranged, and he was very much in debt; that after the bill of sale was made, Nixon took possession of the negroes, and when the ten that were not included in the bill of sale were levied on for the satisfaction of Morris’s debts, Nixon, Morris, and the Sheriff substituted several of those conveyed for some of those that were levied on, and had the former sold and the latter were conveyed by Morris to Nixon; that Nixon has sold several other negroes at private sale, and Morris, when sober, had approved these sales by Nixon, and certified that Nixon’s title was good; that Nixon has paid considerable sums in discharge of Monis’ debts, to enable him to do which,.he has collected monies due to Morris, and has received money from Morris, and that Nixon has repeatedly declared that he took the said bill of sale solely on account of Morris’ intemperate habits *584 to pay his debts and save something for his wife, who is the daughter of Nixon.
The defendant stated to G. T. Fox that his object in taking the bill of sale was for the benefit of his daughter and Morris, because Morris was incapable of attending to the business. He told C. B. Polk that Coleman had cheated Morris, and that he did not intend to pay Coleman’s debt, and that he intended to save as much of Morris’ property as he could for the benefit of his daughter, Mrs. Morris. He told Sam Smith he would show Morris’ friends and his own friends that he did not get Morris’ property for his own benefit, but for Morris’ benefit after his debts were paid; that the reason was because he did not think Morris capable of attending to his business; that after the debts were paid he intended the balance of the property for Morris and his wife and children. He told A. H. Rose that he intended Morris should have all that was left after the debts of Morris were paid. He told P. H. Pruet that'the bill of sale was not taken to defraud any of Morris’ just creditors; that he intended to see that all just debts were paid, and that his wish was to save something for the benefit of Morris’ wife and.Morris. He told B. Williams that he thought he could pay off Morris’ debts and leave something for his (Nixon’s) daughter, that if he did not take care of her who would?
From this proof we think it clear that the deed was freely and voluntarily made by Morris when he was sufficiently sober to know what he was doing, and without thp fraudulent procurement of Nixon. The complainant is not, therefore, entitled to the relief he prays. But we think it equally clear from the proof that Nixon took the conveyance upon a trust to manage the property for Morris to pay his debts, and to save w'hat he could of the property for Morris’ wife and family.
Upon this ground we should have no hesitation in decreeing an account, and a settlement of the remainder on Mrs. Morris and children if they were before the court. But they are not parties, and the bill so far as it seeks to set aside the deed, must be dismissed. In other respects, the decree will be affirmed.